**Idette HERRON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–9912–CR–444**

Court of Appeals of Indiana.

June 7, 2000.

Transfer Denied Sept. 1, 2000.

Julie P. Verheye, Mishawaka, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATHIAS, Judge

Idette Herron brings this interlocutory appeal from the trial court's denial of her motion to dismiss the State's criminal charge of neglect of a dependent. Herron presents one issue for our review, which we restate as: whether an unborn child is a dependent pursuant to IND.CODE § 35–46–1–4 (1998).

We reverse.

## FACTS AND PROCEDURAL HISTORY

The State charged Herron with neglect of a dependent, a Class D felony, based on her ingestion of cocaine between August of 1998 and March 18, 1999, while she was pregnant. Herron's child was born on March 20, 1999 with cocaine present in his system. Herron filed a motion to dismiss the charge, which the trial court denied. The trial court certified its denial of Herron's interlocutory motion to dismiss on November 8, 1999, and Herron filed a petition for interlocutory appeal with this Court on December 2, 1999. We granted Herron's petition on December 20, 1999.

## DISCUSSION AND DECISION

■■■ Herron contends that the neglect of a dependent statute does not apply to her drug use during pregnancy because an unborn child is not a dependent. The relevant portion of IC 35–46–1–4, under which Herron was charged, states:

(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that may endanger his life or health; commits neglect of a dependent, a Class D felony.

IC 35–46–1–4(a)(1). "Dependent", as used in IC 35–46–1–4, is defined as "an unemancipated person who is under eighteen (18) years of age," or "a person of any age who is mentally or physically disabled." IND. CODE § 35–46–1–1(1998). Responding to this question of first impression in Indiana, we must hold that Indiana's criminal statutory definition of dependent does not include an unborn child.

■■■ Interpretation of a statute is a pure question of law and we, therefore, review the trial court's decision de novo. *Mahowald v. State,* 719 N.E.2d 421, 424 (Ind.Ct.App.1999). To determine whether an unborn child is a dependent, making Herron's cocaine use during pregnancy a crime pursuant to IC 35–46–1–4, we turn to the rules of statutory construction.

■■■ The primary goal in interpreting the meaning of a statute is to determine and effectuate legislative intent. *Woods v. State,* 703 N.E.2d 1115, 1117 (Ind.Ct.App.1998). To determine legislative intent, we look to the plain language of the statute and attribute the common, ordinary meaning to terms found in everyday speech. *Id.* Where the General Assembly has defined a word, however, this court is bound by that definition. *Rush v. Elkhart County Plan Comm'n,* 698 N.E.2d 1211, 1215 (1998), *trans. denied.* Moreover, it is just as important to recognize what a statute does not say as it is to recognize what it does say. *Id.* A court may not read into a statute that which is not the expressed intent of the legislature. *Id.* Criminal statutes cannot be enlarged by construction, implication, or intendment beyond the fair meaning of the language used. *Johnson v. State,* 708 N.E.2d 912, 915 (Ind.Ct.App.1999), *trans. denied.* Moreover, criminal statutes are strictly construed against the State. *Pennington v. State,* 426 N.E.2d 408, 410 (Ind.1981). Even though an act may fall within the spirit of a statute, it will not constitute a crime unless it is also within the words of the statute. *Id.*

Where Indiana's General Assembly has previously sought to criminalize conduct affecting unborn children, it has done so specifically. For example, the crime of feticide is specifically defined in the Indiana Code as the knowing or intentional termination of a human pregnancy "with an intention other than to produce a live birth or to remove a dead fetus." IND. CODE § 35–42–1–6 (1998). Indiana's murder statute also distinguishes between the knowing or intentional killing of a human being and the knowing or intentional killing of a fetus that has attained viability. IND.CODE § 35–42–1–1 (1998).

In contrast, the General Assembly has defined "dependent" as "an unemancipated person who is under eighteen (18) years of age," or "a person of any age who is mentally or physically disabled." IC 35–

46–1–1. When considered in light of IC 35–42–1–6 and IC 35–42–1–1, this definition may not be fairly read to include the unborn.

 We recognize that in a civil context, for some time Indiana case law has permitted recovery for injuries sustained by unborn children due to the negligent or intentional acts of others. *See, Cowe by Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 636–37 (Ind.1991); *Walker v. Rinck,* 604 N.E.2d 591, 594 (Ind.1992). However, there is a vast difference between the imposition of civil liability under common law theories and the imposition of criminal liability. It is a well-settled rule in Indiana that all crimes are statutory. *State v. Lopez,* 156 Ind.App. 379, 296 N.E.2d 918, 921 (1973). Conduct by a defendant, however reprehensible, is not a crime unless the General Assembly has exercised its authority to define it as such.

In its brief, the State appears to concede that an unborn child is not a dependent under the General Assembly's definition. State's brief, p. 6. Nevertheless, the State argues that a mother may be prosecuted for acts done prior to her child's birth if those acts ultimately endanger the child after it is born, i.e., becomes a dependent. The State relies on *Fout v. State,* 575 N.E.2d 340 (Ind.Ct.App.1991), in support of this proposition.

In *Fout,* we upheld a father's conviction for neglect of a dependent based on his failure to seek medical treatment *after* his daughter was born with symptoms that he had been previously warned would require prompt medical attention. *Id.* at 342. We did not, as the State contends, uphold the conviction based on the father's failure to heed pre-natal advice that the mother be hospitalized. It was the father's failure to seek prompt medical attention subsequent to his daughter's birth that served as the basis for the State's charge and the father's conviction for neglect of a dependent.

The State's argument based on *Fout* is, therefore, without merit. The plain language of IC 35–46–1–4 contemplates only acts that place one who is a dependent at the time of the conduct at issue in a dangerous situation – not acts that place a future dependent in a dangerous situation. We cannot expand the General Assembly's definition of a dependent and, consequently, the intended application of the neglect of a dependent statute, beyond the fair meaning of the words used. IC 35–46–1–1 and IC 35–46–1–4 do not criminalize conduct that occurs prior to a child's birth.

Reversed.

NAJAM, J., and FRIEDLANDER, J., concur.