Agnes **MURPHY**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 18A05–0411–CR–617.

Court of Appeals of Indiana.

Nov. 22, 2005.

---

John H. Brooke, Brooke Mawhorr, P.C., Muncie, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Agnes Murphy was charged with unauthorized receipt from a voter of a ballot prepared by the voter for voting, a Class D felony,[1] after she accepted a ballot in a sealed envelope from an absentee voter and put it in a mailbox. She moved to dismiss the charge on the ground the statute under which she was charged is unconstitutional, and she brings an interlocutory appeal of the denial of her motion. Murphy raises two issues on appeal, which we restate as:

---

1. Ind.Code § 3–14–2–16. That section provides in pertinent part:

    A person who knowingly does any of the following commits a Class D felony:
       \*     \*     \*     \*     \*     \*
    (4) Receives from a voter a ballot prepared by the voter for voting, except:
       (A) the inspector;
       (B) a member of the precinct election board temporarily acting for the inspector;
       (C) a member of a county election board or an absentee voter board acting under IC 3–11–10; or
       (D) a member of the voter's household or an individual designated as attorney in fact for the voter, when delivering an envelope containing an absentee ballot under IC 3–11–10–1.

1.  Whether the statutory prohibition of unauthorized receipt from a voter of a ballot prepared by the voter for voting is void for vagueness and/or overbreadth; and

2.  Whether receipt of a sealed envelope from an absentee voter and delivery of the sealed envelope to a mailbox amounts to "unauthorized receipt ... of a ballot."

The State asserts Murphy does not have standing to challenge the statute. We agree and accordingly affirm.

## FACTS AND PROCEDURAL HISTORY

In early 2003, Murphy went to Helen Hines' apartment and had Hines sign a form to receive an absentee ballot in the mail. Murphy later returned to collect the ballot. Hines gave Murphy a sealed envelope containing the ballot and Murphy put it in a mailbox to be delivered to the county clerk.

The State charged Murphy under Ind. Code § 3–14–2–16. Murphy moved to dismiss on the ground the statute was unconstitutional. The trial court granted her motion, but on the ground the State's information was defective. The State again charged Murphy and she again moved to dismiss on the ground the statute was unconstitutional. That motion was denied and the question was certified for interlocutory appeal.

## DISCUSSION AND DECISION

We review for an abuse of discretion the denial of a motion to dismiss. *Johnson v.*

*State*, 774 N.E.2d 1012, 1014 (Ind.Ct.App. 2002). In so reviewing a trial court's decision, we reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

### 1. *Standing to Assert Vagueness or Overbreadth*

■  The State asserts Murphy does not have standing "to vicariously assert the claims of others not before the court," (Br. of Appellee at 5), and we must agree.

■  Generally, a person to whom a statute may be applied constitutionally may not challenge the statute on the basis that it may conceivably be applied in an unconstitutional manner to others not before the court. *LaRose v. State,* 820 N.E.2d 727, 733 n. 4 (Ind.Ct.App.2005), *trans. denied* 831 N.E.2d 739 (Ind.2005). In *Davis v. State,* 476 N.E.2d 127 (Ind.Ct.App.1985), *reh'g denied, trans. denied,* the Davises challenged the constitutionality of the child neglect statute. We noted vagueness challenges to statutes that do not involve First Amendment freedoms must be examined in light of the facts of the case at hand, and accordingly determined "The Davises are not at liberty to devise a hypothetical situation which would demonstrate vagueness[.]" *Id.* at 130.

■  The overbreadth doctrine is a limited exception to that traditional rule of nonstanding, *id.,* but it applies only to matters implicating First Amendment protections.[2]

---

2.  The State asserts this exception applies only to matters implicating free speech, citing *State v. Baysinger,* 272 Ind. 236, 247, 397 N.E.2d 580, 587 (1979) ("An exception to this general [standing] rule allows a challenge of alleged facial invalidity in the area of free speech."), *appeal dismissed.* It asserts, without explanation or citation to authority, "Whatever rights may be implicated in a vot-

ing context, it is clear that free speech is not among them." (Br. of Appellee at 4.)

We decline to interpret the exception so narrowly. *See, e.g., Davis v. State,* 476 N.E.2d 127, 130 n. 4 (Ind.Ct.App.1985) ("The facial invalidity of a statute for vagueness or overbreadth may be raised outside the facts of the case in controversy where free speech *and other first amendment rights* are implicated.")

*See, e.g., Davis,* 476 N.E.2d at 130 n. 4 ("The facial invalidity of a statute for vagueness or overbreadth may be raised outside the facts of the case in controversy where free speech and other first amendment rights are implicated."), *reh'g denied, trans. denied.*

In *Wells v. State,* 170 Ind.App. 29, 35, 351 N.E.2d 43, 47 (1976), we recognized that exception to the rule of non-standing where First Amendment rights are involved, but we noted "even then, where conduct rather than speech is involved and the appellant stands at the hard core of permissible regulation, his standing to assert facial overbreadth will not be recognized." *Id.*

Wells was arrested and charged with visiting a common nuisance. He was visiting a residence where an undercover officer engaged in a drug purchase. Wells contended the statute was unconstitutional for vagueness and overbreadth because it did not expressly provide that to be guilty of visiting, an accused must have knowledge of the illegal use. Therefore, he argued, it was overbroad in restricting freedom of assembly.

We determined Wells lacked standing to present this issue. We noted an exception where First Amendment rights are involved but held "Clearly the state can permissibly regulate the frequenting of places where controlled substances are known to be illegally kept, used and sold. Upon the facts heretofore recited, Wells stands clearly within the ambit of those subject to regulation." *Id.* at 35, 351 N.E.2d at 47. His claim of vagueness failed for the same reason: "The assertion is that the statute does not express the requirement of knowledge. The evidence is that Wells observed the conduct when the [drug] sample was displayed, that he left with

(emphasis supplied), *reh'g denied, trans. de-*

[the owner of the residence], and returned knowing a sale was about to be made." *Id.,* 351 N.E.2d at 47.

The *Wells* analysis controls the case before us. First Amendment rights are implicated. Murphy does not explicitly so argue, but she asserts "voting and casting ballots as well as working to convince people as to the candidate to choose could not be more fundamental...." (Reply Br. of Appellant Agnes Murphy at 2.) She relies on *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), where the Supreme Court noted:

> Restrictions on access to the ballot burden two distinct and fundamental rights, the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively ... for reasons too self-evident to warrant amplification here, we have often reiterated that voting is of the most fundamental significance under our constitutional structure.

(Internal quotations omitted.)

That decision addressed both the rights of voters and the "distinct and fundamental ... right of individuals to associate for the advancement of political beliefs." *See also Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) ("the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters"). We accordingly find the statute implicates the rights of persons like Murphy "working to convince people as to the candidate to choose."

■ Freedom of association is protected by the First Amendment and is protected from infringement by the States under the

nied.

Fourteenth Amendment. *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Id.* at 31 (quoting *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964)). Under the State's interpretation of the statute, Murphy asserts, "the ability of this voter to cast a vote is and should be restricted for no other reason than her inability to get to the election office. Such an interpretation is repugnant to public policy." (Br. of Appellant Agnes Murphy at 14.) We accordingly decline the State's invitation to hold First Amendment rights are not implicated in the voting context.

Even so, Murphy lacks standing to challenge the statute in this specific fact situation because she, like Wells, "is clearly within the ambit of those subject to regulation." 170 Ind.App. at 35, 351 N.E.2d at 47. Just as Wells was undoubtedly in violation of the prohibition of visiting a common nuisance when he knowingly visited a residence where an undercover officer engaged in a drug purchase, Murphy accepted a ballot from a voter and was not within one of the listed categories of persons authorized to do so. We therefore may not consider her challenge to the constitutionality of the statute.[3]

3. With the facts before us, we may not reach the question whether the statute is vague or overbroad. We must accordingly agree Murphy may not raise such "hypothetical situations which would demonstrate vagueness," as she is clearly within the ambit of those subject to regulation under the terms of the statute. However, we note with concern some examples of the felony prosecutions Murphy explains the statute could permit:

[W]hat would happen to a nurse, postal carrier, or Good Samaritan that picked up

## 2. Violation of the Statute

■ Murphy asserts if the statute is constitutional she did not violate it: "it is clear from the facts of the case that [Murphy] never received an actual ballot from a voter. Instead, [Murphy], with the authority of [the voter], merely delivered a sealed envelope to a mailbox." (Br. of Appellant Agnes Murphy at 12.) To criminalize receipt of a sealed envelope containing a ballot might, Murphy notes, cause a mail carrier to be in violation of the statute.

■ Murphy relies on the rule that penal statutes are to be strictly construed against the State so they will not be enlarged "by construction, implication, or intendment beyond the fair meaning of the language used." *Herron v. State,* 729 N.E.2d 1008, 1010 (Ind.Ct.App.2000) (holding the definition of "dependent" in the statute criminalizing neglect of a dependent may not be fairly read to include the unborn), *trans. denied* 741 N.E.2d 1252 (Ind.2000).

The State concedes penal statutes are to be construed strictly against the State, but notes they are not to be read so narrowly that they exclude cases they fairly cover. *Sales v. State,* 723 N.E.2d 416, 420 (Ind. 2000). It asserts, without citation to authority, that the legislature's intent in enacting Ind.Code § 3–14–2–16

a ballot from a physically infirm, but mentally alert, voter to place in the mail? ... Even an orderly in a hospital could be convicted of taking a ballot from a patient in a room for delivery in the hospital regular mail. What conduct is the state trying to prohibit and how would someone of ordinary intelligence know that a patient in a hospital could not give his sealed completed ballot to his doctor, nurse, or orderly?
(Br. of Appellant Agnes Murphy at 10–11.)

could only have been to discourage voter fraud by criminalizing the knowing receipt and handling of completed ballots by unauthorized persons. The legislature could not have intended that the receipt of an envelope that the recipient knows to contain a ballot would be excluded, as the recipient is still undeniably receiving a ballot.

(Br. of Appellee at 7–8.)

While we express no opinion as to the State's characterization of the legislature's intent, we agree that interpreting the statute in the manner Murphy suggests is improper because of the "absurd result" (*id.* at 7) that interpretation would reach. *See, e.g., State v. Evans*, 810 N.E.2d 335, 337 (Ind.2004) (we presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results), *reh'g denied.*

To exempt from the coverage of a statute the receipt of a prohibited item just because the item is in a container of some kind would amount to an absurd result, and is inconsistent with our prior approach to such situations. *See, e.g., Castillo v. State*, 734 N.E.2d 299, 305 (Ind.Ct.App. 2000) (upholding conviction of possession of cocaine when police observed someone throw cocaine out of an upstairs bedroom window, even though the cocaine was in a package), *reh'g denied.*

We accordingly affirm the denial of Murphy's motion to dismiss.

VAIDIK, J., and SHARPNACK, J., concur.