In the Matter of the TERMINATION OF the PARENT–CHILD RELATIONSHIP OF I.B., Minor Child and M.L., Child's Mother, Appellant,

v.

INDIANA DEPARTMENT OF CHILD SERVICES, Appellee.

No. 03A05–0912–JV–676.

Court of Appeals of Indiana.

Feb. 17, 2010.

Transfer Granted April 29, 2010.

Daniel B. Schuetz, Franklin, IN, Attorney for Appellant.

Robert Henke, Heather H. Kestian, Indiana Dep't of Child Services, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Counsel for M.L. ("Mother") appeals the trial court's denial of the motion to appoint appellate counsel to appeal the termination of Mother's parental relationship with I.B.

We affirm.

### ISSUE

Whether the trial court abused its discretion when it denied the motion to appoint counsel to appeal the termination of Mother's parental relationship with I.B.

### FACTS

On July 9, 2007, I.B. was born premature, with a meconium screen positive for amphetamine and methamphetamine, and Mother tested positive for amphetamine. On July 19, 2007, the Bartholomew County Office of the Indiana Department of Child Services ("DCS") removed I.B. from Moth-

er's care[1] and petitioned the trial court to find him a Child In Need of Services ("CHINS"). On July 23, 2007, Mother and her mother (K.J.) attended the detention hearing, where it was requested that I.B. be placed with K.J. upon his release from the hospital.

At the July 30, 2007 status hearing, Mother was informed of her rights; and the trial court authorized I.B.'s placement with K.J. In the weeks following I.B.'s birth, Mother had two negative drug screens, but after August of 2007, she refused to submit to further drug screens as DCS requested. DCS agreed to allow Mother to move into K.J.'s house, where I.B. was also living, and several months later she did so.

At the dispositional hearing held on October 9, 2007, Mother admitted that I.B. was a CHINS, and the court ordered her to participate in a series of agreed services in order to establish her ability to provide appropriate care to I.B. After initially cooperating and generally displaying responsible conduct during supervised visitation and individual counseling sessions in K.J.'s home, matters deteriorated in late 2007 and early 2008. Despite her history of drug and alcohol abuse, Mother refused to complete a required substance abuse evaluation. Her DCS case manager noted in January of 2008, that although Mother was residing in the house with I.B., K.J. provided the majority of his care, and there were episodes of alcohol abuse by Mother. In February, her DCS case manager advised Mother that "if she didn't follow through with her case plan, ... termination would be the recommendation at her next court hearing. (Term. Hr'g. Tr. 72).

On March 3, 2008, K.J. and her husband (Mother's stepfather) ordered Mother to leave their home because of her repeated violations of their no-alcohol policy; she moved out on March 16th. Mother's numerous missed or cancelled supervised visitation and individual counseling sessions resulted in Family Services' terminating those services in April. On April 10, 2008, DCS recommended termination of Mother's parental rights, and that I.B. remain in placement with K.J.

Subsequent to April of 2008, Mother refused to comply with any provision of her case plan. On May 30, 2008, her DCS case manager met Mother and advised her of how to proceed if she wanted to try again, and

> [Mother] said she didn't want to complete anything. ... she didn't want to do anything. If she wanted to see I[.], she'd come over when her mom was there. And that's all she was going to do. She was done with services.

[Term. Hr'g. Tr. 77]. Thereafter Mother had no contact with DCS or any of her previous service providers, and K.J. did not know how to contact her.

At the permanency hearing held on June 26, 2008, the trial court reviewed DCS reports and heard testimony from K.J. that I.B. was "doing very well" in her care, and that Mother was "not amenable to help" and was "still abus[ing] alcohol." (DCS App. 131). The court approved DCS' recommended plan for termination. On September 5, 2008, DCS filed a formal petition for termination. On October 23, 2008, counsel was appointed to represent Mother.

Upon commencement of the initial phase of the first fact-finding hearing on February 24, 2009, the trial court received evidence of service by publication on Mother.[2]

---

1. I.B. was still in the hospital at this time.

2. Publication was on September 18, September 25, and October 2, 2008.

Mother's appointed counsel advised the trial court that he had never met Mother; had had absolutely no contact with her; and had no knowledge of how to locate her. He asked to withdraw his representation on Mother's behalf. DCS noted Mother's initial participation in services, and the trial court denied counsel's motion to withdraw.

On February 24th and 28th, the trial court heard testimony as to the foregoing from Mother's DCS case managers; her visitation and counseling service providers; and K.J. Mother's appointed counsel cross-examined the witnesses. Mother was not present either day. K.J. testified that she had told Mother of the upcoming termination hearing and asked whether she would attend, to which Mother responded, "I told you I was done with the State." (Term. Hr'g. Tr. 99). K.J. testified that although she heard from or saw Mother on occasion, she had no address or phone number by which to reach her. Counsel for Mother offered no evidence in rebuttal.

At the conclusion of the February 27, 2009 hearing, the magistrate stated that DCS had proved the requisites for termination by clear and convincing evidence, specifically noting that Mother's "lapses in parenting are significant combined with her unwillingness to address the reasons that cause[d] the child's removal," and "that termination would be in the best interest of" I.B. (*Id.* at 101). On July 28, 2009, the trial court issued its order terminating the parental relationship.

On July 31, 2009, Mother's appointed trial counsel filed a motion for the appointment of appellate counsel. At the August 12, 2009 hearing thereon, Mother's appointed counsel stated that he had never had any contact with Mother and did not know whether she wished to appeal. On

August 13, 2009, the trial court issued its five-page order,[3] therein noting Mother's failure to appear at the February termination hearings; and

> [t]here is no reason to believe that Mother desires an appeal to be taken in this case. The child was born on July 9, 2007 and was taken from her due to having methamphetamine and amphetamine in his meconium. Mother tested positive for methamphetamine at the time the child was removed. The child was released to Mother's parents, the Maternal grandparents. DCS allowed Mother to reside with her parents and have contact with the Child. Even then, Mother did not move into her parents' home until December of 2007. Mother moved back out in March of 2008. During the period of time that Mother lived with her parents, she was absent for long periods of time. Mother has not had contact with Child since April of 2008. Mother's last contact with the DCS case manager was in May of 2008 and at that time, Mother **reported that she would not participate in the case plan or cooperate with any services.** Mother has not left a forwarding address with any of the parties herein.

(Appellant's App. 7) (emphasis in original, quoting Term. Order ¶ 15). The trial court further noted the statutory provision whereby a parent "is entitled to representation by counsel in proceedings to terminate the parent-child relationship," but found that such proceedings "ha[d] concluded." *Id.* (quoting Ind.Code § 35–32–2–5). The trial court then held that inasmuch as the proceedings had concluded and Mother had "not requested this Court to appoint counsel to appeal the Court's decision, under these circumstances it is

---

**3.** We bring to appellate counsel's attention that the appellant's *brief* "shall include" the order appealed. Ind. Appellate Rule 46(A)(10).

not appropriate for the Court to appoint an attorney to represent Mother" in an appeal of the termination order. *Id.* Nevertheless, in recognition of the absence of "case law determining the trial court's obligations under these circumstances," *id.,* the trial court appointed counsel to appeal its order of denial.

## DECISION

■ Appellant counsel's extremely brief argument is that because the Indiana statute provides for appointment of counsel "in proceedings to terminate the parent-child relationship," citing to Indiana Code section 31–32–4–3, and "one's right to parent one's children" has "Constitutional implications," it is reasonable that the parent's "right to counsel should extend to appellate review of" the judgment terminating that relationship. Appellant's Br. at 4, 5. Other than to suggest that our standard of review is that applied when interpreting a statute, the brief provides no further citation to authority *or* development a cogent argument in support of the proposition presented. Accordingly, we are not persuaded.

■ We begin our analysis with Indiana Code section 31–32–2–5, to which appellant's counsel does not refer. "A parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship." I.C. § 31–32–2–5. As the trial court noted, this provision requires representation during the course of the "proceedings to terminate." *Id.* A "proceeding" is "the regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's Law Dictionary 1241 (8th ed. 2004). "When a statute is clear and unambiguous, we do not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." *City of Carmel v.*

*Steele,* 865 N.E.2d 612, 618 (Ind.2007). Moreover, it is just as important to recognize what a statute does not say as it is to recognize what it does say. *Herron v. State,* 729 N.E.2d 1008, 1010 (Ind.App. 2000). A court may not read into a statute that which is not the expressed intent of the legislature. *Id.* We do not find the statutory provision to be ambiguous insofar as addressing the parent's representation to appeal the termination *judgment;* it simply does not do so.

Appellant's counsel directs our attention to Indiana Code section 31–32–4–3, providing that

(a) [i]f

(1) a parent in proceedings to terminate the parent-child relationship does not have an attorney who may represent the parent without a conflict of interest; and

(2) the parent has not lawfully waived the parent's right to counsel under IC 31–32–5 (or IC 31–6–7–3 before its repeal);

the juvenile court shall appoint counsel for the parent at the initial hearing or at any earlier time.

(b) *The court may appoint counsel to represent any parent in any other proceeding.*

Counsel correctly suggests that the emphasized statutory language "is permissive and not compulsory." Appellant's Br. at 4. Again, however, the statute does not unambiguously mandate the appointment of counsel for the appeal of the termination order. Therefore, the above authority and reasoning applies.

■ Appellant's counsel directs us to no authority for the "constitutional implications" of Mother's right to parent. Appellant's Br. at 4. *Lassiter v. Dep't of Social Servs. of Durham County, N.C.,* 452 U.S. 18, 31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), held that due process under the

U.S. Constitution does not "require[ ] the appointment of counsel in every parental termination proceeding" involving an indigent parent, but that an analysis of the circumstances must be undertaken. In that case, it held that "a court deciding whether due process requires the appointment of counsel need not ignore a parent's plain demonstration that she is not interested in attending the hearing." *Id.* at 33, 101 S.Ct. 2153. Specifically, when the parent "had not even bothered to speak to her retained lawyer after being notified of the termination hearing," and the trial court had found the parent's "failure to make an effort to contest the termination proceeding was without cause," the Supreme Court found no violation of the U.S. Constitution's due process clause in the trial court's "failing to appoint counsel for [her]." *Id.* Likewise, here, the trial court found that based upon the totality of the evidence at the termination proceedings, and Mother's complete failure to contact *anyone* in an effort to retain her parental relationship with I.B. during or subsequent to the termination proceedings, there was in effect no request by Mother to pursue an appeal of the termination order. Such circumstances are akin to those in *Lassiter*, and lead us to reasonably conclude that there is no due process violation here. Further, in *Baker v. Marion County Office of Family and Children*, 810 N.E.2d 1035, 1039 (Ind.2004), our Supreme Court found that although the Indiana legislature had "chosen to provide counsel in termination proceedings to all parents who are indigent," citing to Indiana Code sections 31–32–4–1 and 31–32–2–5, the "Code does not provide for appointment of counsel to seek post-judgment . . . relief."

■ Finally, we consider the applicability of the following Indiana statutory provisions:

An indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person.

I.C. § 34–10–1–1. If the court is "satisfied that a person who makes" such an application

does not have sufficient means to prosecute or defend the action, the court:
(1) shall admit the applicant to prosecute or defend as an indigent person; and
(2) may, under exceptional circumstances, assign an attorney to defend or prosecute the cause.

I.C. § 34–10–1–2(b). In deciding whether to make such an assignment of counsel, the trial court may consider factors that

include the following:
(1) the likelihood of the applicant prevailing on the merits of the applicant's claim or defense.
(2) the applicant's ability to investigate and present the applicant's claims or defenses without an attorney, given the type and complexity of the facts and legal issues in the action.

I.C. § 34–10–1–2(c). The statute further provides that the trial court "shall deny an application" when the applicant has "failed to make a diligent effort to obtain an attorney" or "is unlikely to prevail on the applicant's claim or defense." I.C. § 34–10–1–2(d).

We first note that Mother never sought counsel, *i.e.*, she never met the initial threshold requirement of "apply[ing]" for counsel to pursue an appeal of the termination order. I.C. § 34–10–1–1. Further, even if she had applied for counsel to represent her on appeal, the trial court would have been entitled to consider "the likelihood of [her] prevailing on the merits" of such an appeal, I.C. § 34–10–1–2(c)(1); and such consideration would surely have included the fact that the evidence

demonstrated Mother's lack of interest in retaining her parental relationship and her failure to participate in the termination hearings. Finally, even if Mother had applied for representation on the appeal of the termination order, the trial court would have been within its authority to deny the assignment of counsel, given (1) her failure to make any effort—let alone a "diligent effort to obtain an attorney" for the purpose of an appeal, and (2) the unlikelihood of her "prevail[ing]" on appeal, based on the strength of the evidence presented at the termination hearing and Mother's failure to participate in that hearing. I.C. § 34–10–1–2(d)(1), (2).

As our Supreme Court held, before the statute was amended to read as provided above, "the decision to appoint counsel for an indigent litigant in a civil case turns on the court's assessment of the nature of the case, the genuineness of the issues, and any other factors that bear on the wisdom of mandating public funds for that purpose." *Sholes v. Sholes*, 760 N.E.2d 156, 159 (Ind.2001). To prevail on an argument that the trial court should have assigned counsel pursuant to the current statute, the "burden is on the party seeking to proceed as an indigent person to demonstrate that he meets the statutory requirements for the appointment of counsel." *Maust v. Estate of Bair ex rel. Bair*, 859 N.E.2d 779, 785 (Ind.Ct.App.2007) (citing *Sholes*, 760 N.E.2d at 160). Clearly Mother, who as the trial court noted has not even "requested" the appointment of counsel to appeal the termination order, (Appellant's App. 7), has not carried her burden.

Affirmed.

MAY, J., and KIRSCH, J., concur.