THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICIA DEGANUTTI, Defendant-Appellant.

First District (3rd Division)   No. 1—02—2855

Opinion filed May 12, 2004.

Peter J. Vilkelis, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and John E. Nowak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HALL delivered the opinion of the court:
Defendant Patricia Deganutti was charged by indictment with one

count of unlawful observation of voting and one count of absentee ballot violation, in connection with the completion and mailing of a voter's absentee ballot cast in the March 21, 2000, primary election. Defendant was also charged in a second indictment for the same two offenses regarding a second voter in the same election. The two cases were consolidated.

Following a bench trial, defendant was found guilty on all four counts. After defendant's motion for reconsideration or in the alternative for a new trial was denied, the trial court sentenced defendant to 18 months' probation. She filed her timely notice of appeal on September 11, 2002.

On appeal, defendant contends that: (1) she was not proven guilty beyond a reasonable doubt of unlawful observation of voting; (2) she was not proven guilty beyond a reasonable doubt of absentee ballot violations; and (3) section 29—9 of the Election Code (Code) (unlawful observation of voting) and section 29—20(4) of the Code (absentee ballots—violations) (10 ILCS 5/29—9, 29—20(4) West 2000)) are both unconstitutional. For the reasons that follow, we affirm.

The presented testimony revealed the following facts. At the time of the alleged offenses, defendant worked as a precinct captain in precinct 65, in the Town of Cicero, Illinois. It was established that during the months immediately leading up to the March 21, 2000, primary election, defendant twice visited the respective homes of two registered voters living in the town of Cicero.

Rose M. Soderholm testified that in January/February 2000, she was in the hallway of her apartment building when she was approached by defendant and an unidentified male. Soderholm testified that she had not previously met defendant. Defendant introduced herself as the area's precinct captain and asked Soderholm if she was a registered voter, to which Soderholm replied "yes." Defendant also wanted to know if the building's landlord "was around." Defendant went upstairs to speak with the landlord and shortly afterwards returned to talk with Soderholm. This conversation took place in the doorway to Soderholm's apartment.

Soderholm testified that after she responded to defendant that she was interested in voting, defendant handed her an application for an absentee ballot for the upcoming March 21, 2000, primary election. Soderholm signed the application and handed it back to defendant, who took the application with her. Soderholm stated that she had never previously applied to vote by absentee ballot. Evidence was presented that after Soderholm signed her application and handed it over to defendant, some unknown individual later filled in Soderholm's return address on the application and put check marks in

certain boxes on the application where it asked the applicant to give the reason why he or she was voting absentee and to indicate the applicant's political affiliation. Soderholm's application read that the reason she was voting absentee was because she expected to be absent from her county of residence on election day and it indicated that she wanted to vote in the Republican primary.

Sometime later, Soderholm received her absentee ballot in the mail. Shortly thereafter, in early March 2000, defendant made an unannounced visit to Soderholm's apartment. Soderholm had not requested the visit. Soderholm and defendant sat on the couch in Soderholm's living room, where defendant inquired as to whether Soderholm had received the absentee ballot. After acknowledging receipt of the absentee ballot, Soderholm retrieved the envelope containing the ballot materials and she and defendant opened the envelope and took out the ballot. Soderholm testified that as she and defendant sat together on the couch, about one foot from each other, she followed defendant's instructions on which numbers to punch on the absentee ballot. Soderholm testified that defendant was "watching" her as she punched out the numbers on the ballot.

Soderholm testified that she did not punch any numbers on the ballot other than the numbers defendant instructed her to punch. Soderholm stated that during this time she never asked defendant for any candidate recommendations regarding the election, never asked for any assistance in completing the ballot, and never told defendant that she did not understand how to fill out the ballot.

After Soderholm finished punching the numbers on the absentee ballot, she and defendant put the ballot in an envelope and sealed the envelope, and Soderholm signed the back of the envelope. Soderholm then handed the sealed envelope to defendant, who took the envelope and left the apartment. Soderholm testified that she never asked defendant to mail the envelope for her.

On cross-examination, Soderholm acknowledged that defendant never bribed or threatened her into filling out the absentee ballot. She also conceded that defendant never told her to keep the execution of her absentee ballot a secret. Soderholm testified that eventually an investigator from the State's Attorney's office showed up at her apartment asking questions regarding her absentee ballot.

Next, Martha A. Martinez testified that in the weeks prior to the March 2000, primary election, defendant and a man she believed was named Chuck Gonzales came to her home. She had never met defendant. Defendant introduced herself as the precinct captain and asked Martinez if she wanted to vote absentee. Martinez responded that she wanted to vote absentee rather than travel to the polls and

stand in line to vote since she was nine months pregnant and had gestational diabetes, which required her to take daily insulin. Defendant then gave Martinez an application for an absentee ballot for the upcoming March 21, 2000, primary election. Martinez signed the application and handed it back to defendant, who took the application and left.

Evidence was presented that an unidentified person later filled in Martinez' return address on the application and put check marks in boxes on her application where it asked her to give the reason why she was voting absentee and indicate her political affiliation. Similar to Soderholm's application, Martinez' application read that the reason she was voting absentee was because she expected to be absent from her county of residence on election day and it indicated that she wanted to vote in the Republican primary.

Approximately a week later, Martinez received her absentee ballot in the mail. Martinez put the ballot on her bedroom dresser and forgot about it until two weeks later when defendant paid an unannounced visit to her home. Defendant was accompanied by Chuck Gonzales, the Hispanic liaison to the Town of Cicero. Martinez, her husband, defendant, and Gonzales all met in Martinez' living room. Martinez informed defendant that she had not yet mailed her absentee ballot because she had been feeling sick the last two weeks. Defendant responded that it was "okay" and that Martinez could fill out the ballot right then. In response, Martinez stated that she felt sick and would like to fill out the ballot at a later time. Defendant replied that Martinez should fill out the ballot at that time, and if she did so, defendant would take the ballot and drop it in the mailbox for her.

Martinez then went to her bedroom, where she retrieved the envelope containing the absentee ballot materials, opened the envelope, and took out the ballot. Martinez, defendant, and Gonzales went into Martinez' dining room because there was better lighting in that room. Defendant then stated, "let me give you some numbers," whereupon defendant gave Martinez a flier with numbers on it. Martinez took the flier, sat down at her dining room table and proceeded to punch holes in the ballot card that corresponded to the numbers on the flier. Martinez testified that as she was punching holes in her ballot, defendant was standing about three feet away on her right-hand side. Martinez did not notice if defendant was looking directly at her since she was busy punching holes in the ballot. Martinez stated that she never asked for defendant's assistance in completing the ballot.

Martinez testified that after she finished completing the ballot, she inserted it into a small holding slip, which is in turn put into a mailing envelope. Martinez testified that she gave defendant the slip

and ballot since defendant was holding the rest of the absentee ballot materials. Defendant removed the ballot from the slip, held it up to the light, and informed Martinez that one of the numbers had not been punched all the way through on the ballot card. Martinez took the ballot and punched the number through the ballot card a second time.

After punching the ballot a second time, Martinez handed the ballot back to defendant. Defendant then told Martinez that she would mail Martinez' ballot "with the rest of them," but that Martinez would have to sign the back of the mailing envelope before it could be mailed. Martinez signed the envelope and handed it back to defendant, who then took the envelope and the enclosed ballot and left. Martinez testified that she did not ask defendant to mail her absentee ballot.

Gary M. Rycyzyn, an employee with the election department of the Cook County clerk's office, gave direct testimony regarding the absentee ballot process. On cross-examination, Rycyzyn testified that to his knowledge, Soderholm's and Martinez' return envelopes were not found to have been tampered with.

Defendant testified in her own behalf. She did not dispute Soderholm's and Martinez' testimony, but testified that she had done exactly what she was instructed to do by fellow precinct captains and other individuals in her political organization. Defendant now appeals her convictions.

## ANALYSIS

■ Defendant first contends that she was not proven guilty beyond a reasonable doubt of unlawful observation of voting because the State failed to prove that she "knowingly" observed either Soderholm or Martinez complete her respective absentee ballot. Section 29—9 of the Code, titled "Unlawful observation of voting," provides in relevant part:

"[A]ny person who knowingly marks his ballot or casts his vote on a voting machine or voting device so that it can be observed by another person, and any person who knowingly observes another person lawfully marking a ballot or lawfully casting his vote on a voting machine or voting device, shall be guilty of a Class 4 felony." 10 ILCS 5/29—9 (West 2000).

In the present case, defendant argues that the State failed to prove the element of knowledge beyond a reasonable doubt. We must reject defendant's contention.

■ Under the applicable standard of review, this court must determine whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, when view-

ing the evidence in the light most favorable to the prosecution. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985). Pursuant to section 4—5 of the Criminal Code of 1961, a defendant is deemed to have acted knowingly if he was consciously aware that his conduct was practically certain to cause the offense defined in the statute. 720 ILCS 5/4—5 (West 2000). By its very nature, the mental element of knowledge is ordinarily established by circumstantial evidence rather than direct evidence. *People v. Weiss*, 263 Ill. App. 3d 725, 731, 635 N.E.2d 635 (1994). Knowledge may be inferred from the facts and circumstances of the case. *People v. Holt*, 271 Ill. App. 3d 1016, 1025, 649 N.E.2d 571 (1995).

■ Based on the facts and circumstances in this case, the State proved beyond a reasonable doubt that defendant knowingly observed both Soderholm and Martinez as they punched their respective absentee ballots. In regard to Soderholm, the undisputed facts reveal that as Soderholm marked her ballot, defendant sat nearby on the same couch, only one foot away. During this time, defendant recited the numbers she wanted Soderholm to punch on the ballot and Soderholm punched her ballot according to defendant's instructions. Moreover, Soderholm testified that defendant was "watching" her as she punched out the numbers on the ballot. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that defendant knowingly observed Soderholm completing her absentee ballot.

The evidence also shows that defendant knowingly observed Martinez as she punched her absentee ballot. Martinez testified that as she was about to start punching her ballot card, defendant stated, "let me give you some numbers," and then handed Martinez a flier with numbers on it. Martinez took the flier, sat at her dining room table and punched holes in the ballot that corresponded to the numbers on the flier. Martinez testified that as she was punching holes in her ballot, defendant was standing about three feet away on her right-hand side. Martinez stated that after she punched the ballot the first time and handed it to defendant, defendant held the ballot up to the light and informed Martinez that one of the numbers had not been punched all the way through on the ballot card. Martinez then punched the ballot again and returned it to defendant. Again, viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that defendant knowingly observed Martinez completing her absentee ballot.

■ The evidence is also sufficient to establish that defendant acted knowingly in violating section 29—20 of the Code, titled "Absentee ballots—violations," which provides in relevant part:

"A person is guilty of a Class 3 felony who knowingly:

\* \* \*

(4) \*\*\* [T]akes an absentee ballot of another person in violation of Section 19—6 so that an opportunity for fraudulent marking or tampering is created." 10 ILCS 5/29—20(4) (West 2000).

Section 19—6 of the Code provides in pertinent part:

"It shall be unlawful for any person not the voter, his or her spouse, parent, child, brother, or sister, or a representative of a company engaged in the business of making deliveries to the election authority to take the ballot and ballot envelope of a voter for deposit into the mail unless the ballot has been issued pursuant to application by a physically incapacitated elector under Section 3—3 or a hospitalized voter under Section 19—13." 10 ILCS 5/19—6 (West 2000).

The absentee ballot return provisions of section 19—6 of the Code are mandatory, not directory. *People v. Hays*, 142 Ill. App. 3d 754, 757-58, 492 N.E.2d 213 (1986). This section of the Code was enacted to "safeguard the integrity of the election process by depriving unauthorized persons of the opportunity to tamper with ballots after they have been completed." *Hays*, 142 Ill. App. 3d at 758. Thus, "the relevant inquiry is not whether a ballot has actually been tampered with, but whether the opportunity for such tampering by unauthorized persons was present." *Hays*, 142 Ill. App. 3d at 758.

■ In the instant case, defendant maintains that the State failed to prove that she had knowledge that her actions in mailing the absentee ballots were unlawful and therefore the State has in turn failed to prove that she knowingly violated the absentee ballot violation section. We must reject defendant's contention. The statute does not require that a defendant know that the act is prohibited, but only that the act of taking an absentee ballot of another person be done knowingly. 10 ILCS 5/29—20(4) (West 2000).

The evidence revealed that defendant knowingly took Soderholm's and Martinez' absentee ballots and mailed them. Defendant testified that it was her practice to take a voter's completed absentee ballot and mail it for him, and that she followed this practice with Soderholm and Martinez.

Finally, defendant contends that section 29—9 of the Code (unlawful observation of voting) and section 29—20(4) of the Code (absentee ballots—violations) both violate federal and state substantive due process guarantees because these statutes only require a knowing mental state rather than a culpable mental state or criminal intent and thereby permit felony convictions for wholly innocent or inadvertent conduct. Again, we must reject the defendant's contentions.

■ Whether a statute is constitutional is a question of law that is reviewed *de novo*. *People v. Morgan*, 203 Ill. 2d 470, 486, 786 N.E.2d 994 (2003). Statutes are presumed to be constitutional and therefore the burden falls on the party challenging the statute to establish its invalidity. *People v. Wright*, 194 Ill. 2d 1, 24, 740 N.E.2d 755 (2000). When legislation does not affect a fundamental right, as in this case, the legislation's compliance with substantive due process requirements is determined under the rational basis test. See *Wright*, 194 Ill. 2d at 24. Under the rational basis test, a statute is upheld where it " 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24, quoting *People v. Adams*, 144 Ill. 2d 381, 390, 581 N.E.2d 637 (1991).

■ As previously mentioned, the statutes at issue were enacted to safeguard the integrity of the election process. See *Hays*, 142 Ill. App. 3d at 758. Both section 29—9 and section 29—20(4) are rationally related to the legitimate state goal of protecting and preserving the integrity of the election process.

Section 29—9 of the Code, the unlawful-observation-of-voting statute, safeguards voter privacy, protecting voters from potential coercion, intimidation and other influences and thereby preserves the integrity of the ballot. Section 29—20(4) of the Code, the absentee-ballot-violations statute, protects the integrity of the election process by depriving unauthorized persons of the opportunity to tamper with completed absentee ballots, thereby addressing such issues as coercion, fraud, and secrecy that potentially arise with absentee voting.

In regard to the statutes at issue, imposition of a culpable mental state would defeat their purpose of protecting and preserving the integrity of the election process. If criminal intent was added to these statutes, the statutes would fail to prevent situations where criminal conduct occurred despite the lack of criminal intent.

The act of knowingly observing another individual cast his ballot, and the act of an unauthorized person knowingly taking an absentee ballot in order to mail that ballot, are acts that are in themselves so potentially damaging to the integrity of the election process that courts have determined that such actors need not have a criminal intent in order to be held criminally liable. See, *e.g.*, *Hays*, 142 Ill. App. 3d at 759 (stating that the knowing failure to comply with the provisions of the Election Code constitute a criminal offense). The same reasoning was applied in *People v. Thoennes*, 334 Ill. App. 3d 320, 777 N.E.2d 1075 (2002), where the reviewing court upheld the constitutionality of a statute that made it a felony for an individual to knowingly impersonate a peace officer despite that individual's lack of criminal

intent; and *People v. Farmer*, 165 Ill. 2d 194, 650 N.E.2d 1006 (1995), where our supreme court upheld a statute that made it a crime to knowingly bring contraband into a penal institution despite the smuggler's lack of criminal intent.

Section 29—9 and section 29—20(4), in requiring only a knowing mental state rather than criminal intent, are both rationally related to the legitimate state goal of protecting and preserving the integrity of the election process. Consequently, we hold that both statutes are constitutional.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SOUTH and KARNEZIS, JJ., concur.