# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3770

PHYLLIS GRIFFIN, *et al.*,

*Plaintiffs-Appellants,*

v.

ELAINE ROUPAS, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 5270—**Ronald A. Guzmán**, *Judge.*

_____

ARGUED SEPTEMBER 8, 2004—DECIDED OCTOBER 15, 2004

_____


Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiffs, who appeal from the grant of a motion by the defendants (the members of the Illinois State Board of Elections) to dismiss the complaint for failure to state a claim, are working mothers who contend that because it is a hardship for them to vote in person on election day, the U.S. Constitution requires Illinois to allow them to vote by absentee ballot. Illinois allows voting by absentee ballot only if the voter either "expects to be absent [on election day] from the county in which he is a qualified elector" or is unable to vote in person because of physical

incapacity, religious observance, residing outside his precinct for attendance at a college or university, or having to perform specified official duties—election judge in another precinct, certain other election duties, or serving as a sequestered juror. 10 ILCS 5/19-1. Failing as they do to qualify for any of these exceptions, the plaintiffs ask us to order in the name of the Constitution weekend voting, all-mail voting, an unlimited right to an absentee ballot, a general hardship entitlement to such a ballot, or some other change in Illinois law (Internet voting from home, perhaps?) that would allow people who find it hard for whatever reason to get to the polling place on election day nevertheless to vote.

The procedural setting requires us to accept the allegation in the complaint that the plaintiffs, although they will not be out of the county in which they are registered to vote on election day, will be unable to get to the polling place even though the polls are open in Illinois from 6 a.m. to 7 p.m. on election day and employers are required to give employees two hours off work that day if they need the time for voting. 10 ILCS 5/17-1, -15. Many people besides working mothers might find themselves in the same fix, such as emergency-room and other medical personnel, persons who work at the other end of a large county from their precinct, persons who work at two jobs, and those who are caring for a sick or disabled family member.

The Constitution does not in so many words confer a right to vote, though it has been held to do so implicitly. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665-66 (1966); *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964); *Tucker v. U.S. Dept. of Commerce*, 958 F.2d 1411, 1414-15 (7th Cir. 1992); *Hall v. Simcox*, 766 F.2d 1171, 1172-73 (7th Cir. 1985). Rather, it confers on the states broad authority to regulate the conduct of elections, including federal ones. U.S. Const. art.

I, § 4, cl. 1; *Storer v. Brown*, 415 U.S. 724, 729-30 (1974); *Marston v. Lewis*, 410 U.S. 679, 681 (1973) (per curiam); *Krislov v. Rednour*, 226 F.3d 851, 859 (7th Cir. 2000); *Gelb v. Board of Elections*, 224 F.3d 149, 153-54 (2d Cir. 2000). Because of this grant of authority and because balancing the competing interests involved in the regulation of elections is difficult and an unregulated election system would be chaos, state legislatures may without transgressing the Constitution impose extensive restrictions on voting. Any such restriction is going to exclude, either de jure or de facto, some people from voting; the constitutional question is whether the restriction and resulting exclusion are reasonable given the interest the restriction serves. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59 (1997); *Burdick v. Takushi*, 504 U.S. 428, 438-42 (1992); *Nader v. Keith*, No. 04-3183, 2004 WL 2102087 (7th Cir. Sept. 22, 2004); *Libertarian Party v. Rednour*, 108 F.3d 768, 773 (7th Cir. 1997); *Werme v. Merrill*, 84 F.3d 479, 483-84 (1st Cir. 1996). No greater precision in the articulation of the governing standard seems possible.

In essence the plaintiffs are claiming a blanket right of registered voters to vote by absentee ballot. For it is obvious that a federal court is not going to decree weekend voting, multi-day voting, all-mail voting, or Internet voting (and would it then have to buy everyone a laptop, or a Palm Pilot or Blackberry, and Internet access?). That leaves as the only alternative that will satisfy the plaintiffs a general hardship exemption from the requirement of in-person voting; and as a practical matter that means absentee voting at will. For "hardship" is a subjective category dependent on personal circumstances that cannot be codified but must be left to the judgment of each voter. It is hardly to be supposed that election officials would require proof of hardship or question claims of hardship; the necessary inquiry would be unmanageable.

So at bottom the plaintiffs are arguing that the Constitution requires all states to allow unlimited absentee voting, and the argument ignores a host of serious objections to judicially legislating so radical a reform in the name of the Constitution. Voting fraud is a serious problem in U.S. elections generally and one with a particularly gamey history in Illinois (as we noted in *Nader v. Keith, supra*), and it is facilitated by absentee voting. John C. Fortier & Norman J. Ornstein, "Symposium: The Absentee Ballot and the Secret Ballot: Challenges for Election Reform," 36 *U. Mich. J.L. & Reform* 483 (2003); William T. McCauley, "Florida Absentee Voter Fraud: Fashioning an Appropriate Judicial Remedy," 54 *U. Miami L. Rev.* 625, 631-32 (2000); Michael Moss, "Absentee Votes Worry Officials as Nov. 2 Nears," *New York Times* (late ed.), Sept. 13, 2004, p. A1. In this respect absentee voting is to voting in person as a take-home exam is to a proctored one. Absentee voters also are more prone to cast invalid ballots than voters who, being present at the polling place, may be able to get assistance from the election judges if they have a problem with the ballot. And because absentee voters vote before election day, often weeks before, e.g., *Nader v. Keith, supra*, at *6, they are deprived of any information pertinent to their vote that surfaces in the late stages of the election campaign. The major parties are reported to be encouraging their core supporters to vote by absentee ballot so that, having as it were put them in the bag, the parties can redirect their efforts and pitch to the waverers. R.W. Apple Jr., "Kerry Pins Hopes in Iowa on Big Vote From Absentees," *N.Y. Times* (nat'l ed.), Sept. 28, 2004, p. A18; John Harwood, "Early Voting Begins in Presidential Battlegrounds: In Iowa, 'Ballot Chasers' Seek Decisions and an Edge Weeks Before Election Day," *Wall St. J.*, Sept. 27, 2004, p. A1; Moss, *supra*; Ron Lieber, "Cast a Ballot From the Couch: Absentee Voting Gets Easier," *Wall St. J.*, Sept. 2, 2004, p. D1.

These and other problems created by absentee voting (see, e.g., Michael Moss, "Hurdles Remain for U.S. Voters Living Overseas," *N.Y. Times* (nat'l ed.), Sept. 29, 2004, p. A1) may be outweighed by the harm to voters who being unable to vote in person will lose their vote if they can't vote by absentee ballot. But the striking of the balance between discouraging fraud and other abuses and encouraging turnout is quint-essentially a legislative judgment with which we judges should not interfere unless strongly convinced that the legi-slative judgment is grossly awry. Some states have decided, as the plaintiffs urge us to decide, that the drawbacks of absentee voting are so far outweighed by the interest in increasing voter turnout that every registered voter should be allowed to vote by absentee ballot. E.g., Cal. Election Code § 3003; Colo. Rev. Stat. § 1-8-102; Fla. Stat. Ann. § 101.662; Wash. Rev. Code Ann. § 29A.40.010. Oregon has gone the farthest in this direction by making *all* voting by mail. O.R.S. § 254.465. In Oregon, all ballots are absentee. (On whether the Oregon system is consistent with congressional legisla-tion regulating federal elections, see *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1174-76 (9th Cir. 2001).) Other states, including Illinois, have struck a compromise between concern with fraud and concern with turnout by allowing only certain classes of voter to cast an absentee ballot. E.g., Ala. Code 1975 §§ 17-10-3(a), (b); Ark. Code Ann. § 7-5-402; Md. Code Ann., Election Law § 9-304; Minn. St. § 203B.02; N.J. Stat. Ann. § 19:57-3; N.Y. Elec. Law § 8-400; Tex. Election Code Ann. § 82.001(a). The plaintiffs say this is not good enough; that the Constitution requires Illinois to go farther. But the states that have more liberal provisions for absentee voting may well have different political cultures from Illinois, cultures less hospitable to electoral fraud. One size need not fit all. The unfortunate experience with the "butterfly ballot" used in Palm Beach County, Florida in the 2000 Presidential election, which we recounted in *Nader v.*

*Keith*, *supra*, at *2, illustrates the danger of unanticipated consequences from seemingly innocent alterations in election rules.

The plaintiffs contend alternatively that Illinois law is discriminatory and therefore denies them the equal protection of the laws because it bears more heavily on working mothers than on other classes in the community. The claim is belied by the complaint and briefs, where the hardships that prevent voting in person are illustrated with examples of people who are not working mothers—we mentioned some of those examples earlier. "Working mother" does not define a class that the election law singles out for adverse treatment.

The plaintiffs point out, also in an equal protection vein, that depending on where one lives in a county one might have farther to travel to the polling place than a person who plans to be just across the county line on election day, yet that person is allowed to vote by absentee ballot, no questions asked. But this turns out not to be true. To be entitled to vote by absentee ballot it's not enough that you're going to be out of the county on election day; you must certify that you are unable to vote in person. 10 ILCS 5/19-3.

Anyway, unavoidable inequalities in treatment, even if intended in the sense of being known to follow ineluctably from a deliberate policy, do not violate equal protection. *Apache Bend Apartments, Ltd. v. U.S. Through I.R.S.*, 964 F.2d 1556, 1569 (5th Cir. 1992); cf. *Smith v. Boyle*, 144 F.3d 1060, 1064 (7th Cir. 1998); *Bell v. Duperrault*, 367 F.3d 703, 712 (7th Cir. 2004) (concurring opinion). And while the specific inequality of which the plaintiffs complain could be eliminated if instead of drawing the line at the county boundary the law said that anyone who lives more than, say, 30 miles from his polling place can get an absentee ballot, this would be as coarse a rule as the county-line rule. The length of time it

takes to cover 30 miles depends on road and traffic conditions that vary dramatically across the state. Moreover— and demonstrating the ubiquity of "discrimination" whenever lines have to be drawn—there is no relevant difference from the standpoint of hardship between a person who lives 29.9 miles from the polling place and a person who lives 30.1 miles from it. And how many people even know how many miles their home is from their polling place?

The plaintiffs point out that anyone who wants to vote by absentee ballot has only to apply and check the box for being unable to vote in person because he is going to be out of the county on election day; no one is going to check up on whether he's telling the truth. Of course, that anyone might include the plaintiffs, but they say they're honest and won't lie on the application form though others will. This is ultimately a vote-dilution claim, and it will not fly, because it would amount to saying that any state election law that is enforced laxly, or perhaps is difficult to enforce at all, denies equal protection by hurting honest people.

The plaintiffs' final grievance concerns the length of the Illinois ballot. In 2000, the ballot for Cook County (the county that includes Chicago) "was twenty-one pages long, included the names of four hundred candidates and, for the first time in a presidential election year, had no simple mechanism to enable voters to cast a straight party-line vote. A combination of outdated technology and lengthy, confusing ballots undoubtedly led many voters to spoil their ballots and lose the right to have their vote counted." Paul S. Herrnson, "Improving Technology and Administration: Toward a Larger Federal Role in Elections," 13 *Stan. L. & Policy Rev.* 147, 151 (2002); see also John Mintz & Dan Keating, "A Racial Gap in Voided Votes: Precinct Analysis Finds Stark Inequity in Polling Problems," *Wash. Post*, Dec. 27, 2000, p. A1. The longer and more confusing the ballot,

the stronger the argument for allowing people to vote by mail, since then they can take their time trying to figure out the ballot, while when voting in person in a crowded polling place people are likely to feel rushed and as a result make more mistakes. But this argument has nothing to do with the problems faced by working mothers and other people who find it burdensome to vote in person. It applies to everyone. Its logic is that, Oregon-fashion, *everyone* should vote at home, at least in counties in which the ballot is long. If the plaintiffs got their way, Illinois would be forced to choose between shortening the ballot (and on a county-by-county basis?), which would mean reducing the number of offices filled by election, and allowing everyone to vote at home. The Constitution does not force such a choice on the states.

The suit was correctly dismissed.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*