BYBEE, Circuit Judge,
with whom Circuit Judges O’SCANNLAIN, CLIFTON, CALLAHAN, and N.R. SMITH join, dissenting:
I join in full Judge O’Scannlain’s dissent. I write separately to emphasize two brief points: First, Arizona’s restrictions on who may collect an early ballot — a question very different from who may vote by early ballot — follows closely the recommendation of the bipartisan Commission on Federal Election Reform. Second, the Arizona early ballot law at issue here is a common provision, and similar restrictions on the collection of early or absentee ballots may be found on the books of some twenty-one states. Those provisions have been in effect for decades, and they have been enforced. Unless the Voting Rights Act means that identical provisions are permissible in some states and impermissible in other states, our decision would invalidate many of those provisions, including provisions in other states of the Ninth Circuit.
I
There is no constitutional or federal statutory right to vote by absentee ballot. See McDonald v. Bd. of Election Comm’rs of Chic., 394 U.S. 802, 807-08, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) (“It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots .... [T]he absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny ... the exercise of the franchise_”); see also Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 209, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (Sealia, J., concurring in the judgment) (“That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence — not a constitutional imperative that falls short of what is required.”); Griffin v. Roupas, 385 F.3d 1128, 1130 (7th Cir. 2004) (rejecting the claim that there is “a blanket right of registered voters to vote by absentee ballot;” “it is obvious that a federal court is not going to decree weekend voting, multi- *415 day voting, all-mail voting or Internet voting”).
Arizona’s restrictions on the collection and handling of absentee ballots are neutral provisions designed to ensure the integrity of the voting process. Although the majority claims that there is no evidence of “voter fraud in Arizona caused by ballot collection,” Maj. Op. at 369, (adopting Feldman v. Ariz. Sec’y of State, 840 F.3d 1057, 1089 (9th Cir. 2016) (Thomas, C.J., dissenting)), Arizona does not have to wait until it possesses such evidence before it acts. It may be pro-active, rather than reactionary. And the evidence for voter fraud in the handling of absentee ballots is well known. In 2005, the bi-partisan Commission on Federal Election Reform[1] found: “Absentee ballots remain the largest source of potential voter fraud.” Comm’n on Fed. Elections Reform, Building Confidence in U.S. Elections 46 (2005) [hereinafter Building Confidence]. As the Seventh Circuit so colorfully described it: “Voting fraud is a serious problem in the U.S. elections generally ... and it is facilitated by absentee voting.... [Ajbsentee voting is to voting in person as a take-home exam is to a proctored one.” Griffin, 385 F.3d at 1130-31; see also Wrinn v. Dunleavy, 186 Conn. 125, 440 A.2d 261, 270 (1982) (“[Tjhere is considerable room for fraud in absentee voting and ... a failure to comply with the regulatory provision governing absentee voting increases the opportunity for fraud.” (citation omitted)); Adam Liptak, Error and Fraud at Issue as Absentee Voting Rises, N.Y. Times (Oct. 6, 2012), http://nyti.ms/QUbcrg (discussing a variety of problems in states):
The Commission on Federal Election Reform recommended that “States ... should reduce the risks of fraud and abuse in absentee voting by prohibiting ‘third-party’ organizations, candidates, and political party activists from handling absentee ballots.” Building Confidence, supra, at 46. It made a formal recommendation:
State and local jurisdictions should prohibit a person from handling absentee ballots other than the voter, an acknowledged family member, the U.S. Postal 'Service or other legitimate shipper, or election officials. The practice in some states of allowing candidates or party workers to pick up and deliver absentee ballots should be eliminated.
Id. at 47 (Recommendation 5.2.1). Arizona’s restrictions hew closely to the Commission’s recommendation. H.B. 2023 provides that “A person who knowingly collects voted or unvoted early ballots from another person is guilty of a class 6 felony.” Ariz. Rev. Stat. Ann. § 16-1005(H) (codifying H.B. 2023). Consistent with the Commission’s recommendation, the law does not apply to three classes of persons: (1) “[ajn election official,” (2) “a United States postal service worker or any other person who is allowed by law to transmit United States mail,” and (3) “[a] family member, household member or caregiver of the voter.” Id. § 16-1005(H)~ (I)(l). I don’t see how Arizona can be said to have violated constitutional or statutory norms when it. follows bipartisan recommendations for election reform in an area well understood to be fraught with the risk of voter fraud. Nothing could be *416 more damaging to confidence in our elections than fraud at the ballot box. See Liptak, supra (describing a study by a political scientist at MIT finding that election officials rejected 800,000 absentee ballots in the 2008 presidential election; “That suggests an overall failure rate of as much as 21 percent.”).
II
Moreover, the Arizona provision is substantially similar to the laws in effect in other states. In Indiana, for example, it is a felony for anyone to collect a voter’s absentee ballot, with exceptions for members of the voter’s household, the voter’s designated attorney in fact, certain election officials, and mail carriers. Ind. Code § 3-14-2-16(4). Connecticut also restricts ballot collection, permitting only the voter, a designee of an ill or disabled voter, or the voter’s immediate family members to mail or return an absentee ballot. Conn. Gen. Stat. § 9-140b(a), New Mexico likewise permits only the voter, a member of the voter’s immediate family, or the voter’s caregiver to mail or return an absentee ballot. N.M. Stat. Ann. § 1-6-10,1. At least seven other states (Georgia, Missouri, Nevada, North Carolina, Oklahoma, Ohio, and Texas) similarly restrict who can personally deliver an absentee ballot to a voting location. Ga. Code Ann. § 21-2-385(a) (limiting who may personally deliver an absentee ballot to designees of ill or disabled voters or family members); Mo. Rev. Stat. § 115.291(2) (restricting who can personally deliver an absentee ballot); Nev. Rev. Stat. § 293.330(4) (making it a felony for anyone other than the voter or the voter’s family member to return an absentee ballot); N.C. Gen. Stat. § 163-231(b)(l) (allowing only family members or guardians to personally deliver an absentee ballot); Okla. Stat. Tit. 26, § 14-108(0 (voter delivering a ballot must provide proof of identity); Ohio Rev. Code Ann. § 3509.05(A) (limiting who may personally deliver an absent voter’s ballot); Tex. Elec. Code Ann. § 86.006(a) (permitting only the voter to personally deliver the ballot).[2]
Other states are somewhat less restrictive than Arizona because they, permit a broader range of people to collect early ballots from voters but restrict how many ballots any one person can collect and return. Colorado forbids anyone from collecting more than ten ballots. Colo. Rev. Stat. § l-7.5-107(4)(b); cf. Ga. Code Ann. § 21-2-385(b) .(prohibiting any person from assisting more than ten physically disabled or illiterate electors in preparing their ballot). North Dakota prohibits anyone from collecting more than four ballots, N.D. Cent. Code § 16.1-07-08(1); New Jersey, N.J. Stat. Ann, § 19:63^4(a), and Minnesota, Minn. Stat. Ann. § 203B.08 sbd. 1, three; Arkansas, Ark. Code Ann. § 7-5-403," Nebraska, Neb. Rev. Stat. § 32-943(2), and West Virginia, W. Va. Code § 3-3-5(k), two. South Dakota prohibits anyone from collecting more than one ballot without notifying “the person in charge' of the election of all voters for whom he is a messenger.” S.D. Codified Laws § 12-19-2.2.
*417 Still other states have adopted slightly different restrictions on who may collect early ballots. California and Maine, for example, make it illegal to collect an absentee ballot for compensation. 2016 Cal. Legis. Serv. Ch. 820 (amending California Election Code § 3017 to enable anyone to collect an early ballot provided they receive no compensation); 21-A Me. Rev. Stat. Ann. § 791(2)(A) (making it a crime to receive compensation for collecting absentee ballots); see also Fla. Stat. § 104.0616(2) (making it a misdemeanor to receive compensation for collecting more than two vote-by-mail ballots); N.D. Cent. Code § 16.1-07-08(1) (prohibiting a person to receive compensation for acting as an agent for an elector); Tex. Elec. Code Ann. § 86.0052 (criminalizing compensation schemes based on the number of ballots collected for mailing).
Some of the laws are stated as a restriction on how the early voter may return a ballot. In those states, the voter risks having his vote disqualified. See, e.g., Wrinn v. Dunleavy, 186 Conn. 125, 440 A.2d 261, 272 (1982) (disqualifying ballots and ordering a new primary election when an unauthorized individual mailed absentee ballots). In other states, as in Arizona, the statute penalizes the person collecting the ballot. See Ind. Code § 3-14-2-16 (making it a felony knowingly to receive a ballot from a voter); Nev. Rev. Stat. § 293.330(4) (making it a felony for unauthorized persons to return an absentee ballot); Tex. Elec. Code Ann. § 86.006 (making it a misdemeanor for an unauthorized person to possess between one and twenty ballots and a felony to possess more than twenty); see also Murphy v. State, 837 N.E.2d 591, 594-96 (Ind. Ct. App. 2005) (affirming a denial of a motion to dismiss a charge for unauthorized receipt of a ballot from an absentee voter); People v. Deganutti, 348 Ill.App.3d 512, 284 Ill.Dec. 538, 810 N.E.2d 191, 198 (2004) (affirming conviction for absentee ballot violation); see also Ga. Code Ann. § 21-2-385(b) (providing for penalties up to ten years and a fine of $100,000 for anyone assisting more than ten physically disabled or illiterate electors). In those states, the ballot, even if collected improperly, may be valid. See In re Election of Member of Rock Hill Bd. of Educ., 76 Ohio St.3d 601, 669 N.E.2d 1116, 1122-23 (1996) (holding that a ballot will not be disqualified for technical error).
Ill
“[T]he right to vote is the right to participate, in an electoral process that is necessarily structured to maintain the integrity of the democratic system.” Burdick v. Takushi, 504 U.S. 428, 441, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). H.B. 2023 is well within the range of regulations that other states have enacted. I see no infirmity, constitutional or statutory, in Arizona’s efforts to prevent the potential for fraud in the collection of early ballots. I respectfully dissent.
SMITH, N.R., Circuit Judge,
dissenting:
I join Parts I, II, and III of Judge O’Scannlain’s dissent, along with Judge Bybee’s separate dissent. However, I write separately to emphasize that the majority erred in granting the stay pending appeal, because Appellants cannot meet the standard set forth by Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983).
The standard for granting a stay pending appeal is well established: (1) “the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury”; (2) “the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor”; and (3) we should “strongly consid-ere]’’ the- “public interest.” Id.; see also *418 Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2118, 95 L.Ed.2d 724 (1987). In this ease, in order to determine whether Appellants have met this standard, and are thus entitled to a stay, “we must evaluate [their] arguments for overturning the district court’s [denial of a] preliminary injunction on appeal.” See Lopez, 713 F.2d at 1436. We evaluate the district court’s denial of a preliminary injunction, applying an abuse of discretion standard of review. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). We cannot reverse a district court’s decision unless its decision was based “on an erroneous legal standard or clearly erroneous finding of fact.” Id. (quoting Lands Council v. McNair, 537 F.3d 981, 986 (9th Cir. 2008) (en banc)). Here, the district court did neither. Thus, it is not probable that Appellants will succeed on the merits of their appeal.
In applying these standards here, I wholeheartedly agree with Judge Ikuta’s three-judge panel majority opinion in Feldman v. Arizona, 840 F.3d 1057 (9th Cir. 2016). Appellants raise several challenges to H.B. 2023, including violations of the Voting Rights Act of 1965, § 2; the Fourteenth Amendment; and the First Amendment.
Judge Ikuta thoroughly analyzed Appellants’ likelihood of success on the merits of each theory appealed to us. See Feldman, 840 F.3d at 1068-85. When evaluating whether the district court based its decision by applying an erroneous legal standard, Judge Ikuta first properly applied the two-part legal framework, adopted by our sister circuits, in resolving the Voting Rights Act issue. Id. at 1068-80. She explained why the district court properly applied that legal authority. Id. at 1080-83. I agree that, because the district court found that Appellants’ § 2 claim failed at the first prong, it had no obligation to reach the second prong. Id. at 1076-77. Judge Ikuta next laid out the legal framework for facial challenges to voting laws under the Fourteenth and First Amendments and considered Feldman’s challenges. Id. at 1077-85. She properly applied the Anderson/Burdick, balancing test. Id. at 1079-85. As to the Fourteenth Amendment claim, she explained why “the district court did not clearly err in finding that H.B, 2023 did not ‘significantly increase the usual burdens of voting.’ ” Id. at 1079. She correctly applied Crawford in that analysis. Id. at 1079-84. Lastly, Judge Ikuta addressed the legal authority applicable to the First Amendment claim and correctly determined that “the district court’s conclusion that Arizona’s regulatory interests in preventing voter fraud justifies the minimal burden that H.B. 2023 imposes on associational rights under the Anderson/Burdick test.” Id. at 1084.
Appellants also failed to establish that the district court’s decision as to the facts was “(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.” Id. at 1076 (quoting United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). Judge Ikuta’s discussion of the district court’s factual findings evidences no abuse of discretion. See id. at 1068-85.
Having concluded that the district court did not err in holding that Appellants failed to demonstrate a likelihood of success on the merits, Judge Ikuta then considered the remaining factors for issuing a preliminary injunction. Id. at 1084-87. I agree with her that Appellants. have not established that irreparable harm will flow from a failure to enjoin Arizona, because it is not likely they will suffer a violation of their statutory or constitutional rights. See id. at 1084-85. Appellants have failed to show that the balance of hardships tips *419 sharply in'their favor. See id. The district court’s factual finding that many voters (who entrust their ballots to collectors) do so merely for convenience is not clear error. See id. The record does not reflect any hardship of the organizational plaintiffs to reallocate resources. See id. Thus, Arizona’s hardship in “preserving ballot secrecy and preventing ‘undue influence, fraud, ballot tampering, and voter intimidation’ ” has not been outweighed. See id. (quoting Miller v. Picacho Elementary Sch. Dist. No. 33, 179 Ariz. 178, 877 P.2d 277, 279 (1994) (en banc)). Finally, this record does not evidence that the public’s interest weighs one way or the other in determining this issue. See id. at 1085-87.
This error is further compounded by issuing this stay on the eve of an election. As Judge O’Scannlain excellently points out in his dissent, when our court is presented a request to interfere in a state’s election laws, “just weeks before an election” we are “required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases.” Purcell v. Gonzalez, 549 U.S. 1, 4, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam). These considerations provide an additional reason why we should restrain ourselves in granting a stay in election law cases such as this one. I agree with Judge O’Scannlain’s arguments and many cases cited in his dissent emphasizing this constraint. However, Purcell itself gives specific guidance to us in this case, because the Supreme Court was specifically addressing a Ninth Circuit decision to grant an injunction when dealing with voter identification rules. There, the Supreme Court explained:
We underscore that we express no opinion here on the correct disposition, after full briefing and argument, of the appeals from the District Court’s September 11 order or on the ultimate resolution of these cases. As we have noted, the facts in these cases are hotly contested, and “[n]o bright line separates permissible election-related regulation from unconstitutional infringements.” Timmons v. Twin Cities Area New Party, 520 U.S. 351, 359 [117 S.Ct. 1364, 137 L.Ed.2d 589] (1997). Given. the imminence of the election and the inadequate time to resolve the factual disputes, our action today shall of necessity allow the election to proceed ivithout an injunction suspending the voter identification rules.
Id. at 5-6 (emphasis added).
In other words, even if the Ninth Circuit were right in the ultimate decision to enjoin the application of the voter identification rules in Purcell, “[g]iven the imminence of the election and the inadequate time to resolve the factual disputes,” the Supreme Court, out “of necessity,” allowed the election to proceed without a stay of the application of the voter identification rules. Id.
I especially note the advice in the concurrence of Justice Stevens:
Allowing the election to proceed without enjoining the statutory provisions at issue will provide the courts with a better record on which to judge their constitutionality .... Given the importance of the constitutional issues, the Court wisely takes action that will enhance the likelihood that they will be resolved correctly on the basis of historical. facts rather than speculation.
Id. at 6 (Stevens, J., concurring). Even if I were to agree with the majority, that a preliminary injunction should issue, I would heed Justice Stevens’s advice and allow Arizona’s law to be evaluated on *420 facts rather than speculation.[1] I cannot join the majority opinion, which does not take heed to this good counsel.

. Moreover, at least two states had similar provisions on the books until recently. California formerly limited who could return mail ballots to the voter's family or those living in the same household. Cal. Elec. Code § 3017. It only amended its law earlier this year. 2016 Cal. Legis. Serv. Ch. 820. Illinois also used to make it a felony for anyone but the voter, his or her family, or certain licenced delivery companies to mail or deliver an absentee bed-lot. 10 Ill. Comp. Stat 5/19-6 (1996); 10 Ill. Comp. Stat. 5/29-20(4). Illinois amended that provision in 2015. to let voters authorize others to mail or deliver their ballots. 10 Ill. Comp. Stat. 5/19-6 (2015).

, Early voting in Arizona occurs from October 12, 2016, through November 4, 2016. Staying the enforcement of H.B. 2023 at this late date (which would only allow persons to drop off the early ballots today and on Election Day) will likely result in greater confusion and will not provide courts with a better record of the law’s constitutionality.