NOTICE

Decision filed 12/16/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190306

NO. 5-19-0306

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TRISTA OETTLE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 19-L-3 |
| | ) | |
| EVA GUTHRIE and WILLIAM J. CADIGAN, | ) | |
| in His Official Capacity as Chairman of the | ) | |
| Illinois State Board of Elections, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (William J. Cadigan, Defendant-Appellee; | ) | Honorable |
| The People of the State of Illinois, Intervenor- | ) | Stanley M. Brandmeyer, |
| Appellee). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Justice Barberis concurred in the judgment and opinion.
Justice Cates specially concurred, with opinion.

**OPINION**

¶ 1    This appeal raises the issue of whether section 29-9 of the Election Code (10 ILCS 5/29-9 (West 2018)) is facially unconstitutional. For the reasons that follow, we find the statute to be constitutional as it is a reasonable viewpoint-neutral regulation of a nonpublic forum and, therefore, does not violate the first amendment of the United States Constitution, as applied to the states through the fourteenth amendment.

1

¶ 2                                    I. BACKGROUND

¶ 3      The following facts are undisputed. On November 6, 2018, the day of the midterm elections, the plaintiff, Trista Oettle, reported to her assigned polling place in Clinton County to cast her vote. One of the defendants, Eva Guthrie, the election judge on that date, was asked by the plaintiff whether she could take a photograph with her completed ballot—commonly referred to as a "ballot selfie." Guthrie responded that the plaintiff could "absolutely not" take the picture, and if the plaintiff did so, she "would go to prison." Based on these statements, the plaintiff did not take the photograph.

¶ 4      On November 18, 2018, the plaintiff filed a complaint in the circuit court of Clinton County under 42 U.S.C. § 1983 (2018), claiming that section 29-9 of the Election Code (10 ILCS 5/29-9 (West 2018)) was unconstitutional as it violated her first amendment freedom of speech rights. On January 17, 2019, the State filed a motion to intervene for the purpose of defending the constitutionality of the Election Code, which the trial court granted. On May 7, 2019, the plaintiff filed a first amended complaint that was substantially similar to the original complaint. The first amended complaint named Guthrie as well as William J. Cadigan, who served as the then chair of the Illinois State Board of Elections, as the defendants. Guthrie filed a motion to dismiss pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(9) (West 2018)). Cadigan filed a combined motion to dismiss and for summary judgment. On June 27, 2019, the court granted the motion to dismiss Guthrie from the case, pursuant to section 2-619(a)(9) of the Code. *Id.* § 2-619(a)(9). On July 22, 2019, the court entered a written order granting Cadigan's motion to dismiss, pursuant to section 2-619 of the Code. *Id.* § 2-619.

¶ 5                                    II. ANALYSIS

¶ 6      The plaintiff appeals, arguing that section 29-9 of the Election Code, which criminalizes the taking of a photograph of a completed ballot, is an unconstitutional restriction on political speech. Under the Election Code (10 ILCS 5/29-9 (West 2018)), it is unlawful for a person to knowingly mark his or her ballot so that it can be observed by another person. A violation constitutes a Class 4 felony. *Id.* The constitutionality of a statute is a question of law that this court reviews *de novo*. *Walker v. McGuire*, 2015 IL 117138, ¶ 12.

¶ 7      The first amendment of the United States Constitution, as applied to the states through the fourteenth amendment, states that "Congress shall make no law *** abridging the freedom of speech ***." U.S. Const., amends. I, XIV. Interpreting the foregoing language, the United States Supreme Court has ruled that a government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). The protection of the first amendment is "at its peak" when the speech occurs in a public forum. *Silberberg v. Board of Elections of New York*, 272 F. Supp. 3d 454, 467 (S.D.N.Y. 2017) (citing *McCullen v. Coakley*, 573 U.S. 464, 476 (2014)). However, with regard to a nonpublic forum, "it is also well settled that the government need not permit all forms of speech on property that it owns and controls." *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (citing *United States Postal Service v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981), and *Greer v. Spock*, 424 U.S. 828 (1976)).

         "Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard

3

to the nature of the property or to the disruption that might be caused by the speaker's activities. *Cf. Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 136 (1977). Recognizing that the Government, 'no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated,' *Greer v. Spock*, 424 U.S. 828, 836 (1976), the Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum. *** [W]hen the Government has intentionally designated a place or means of communication as a public forum speakers cannot be excluded without a compelling governmental interest. Access to a nonpublic forum, however, can be restricted as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.' [Citation.]" *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 799-800 (1985).

Thus, in this case, we need to determine whether government-issued election ballots are considered public or nonpublic forums.

¶ 8    Here, we first recognize that a government-issued ballot is not a spatial or geographical location. Nevertheless, as the Supreme Court has noted, "metaphysical" forums are subject to the same forum analysis as a spatial forum. See *Rosenberger v. Rector & Visitors of the University of Virginia*, 515 U.S. 819, 830 (1995) (forum analysis of university's funding of printing for student publications); *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46-

47 (1983) (forum analysis of school mail system); see also *Cornelius*, 473 U.S. at 801 (forum analysis of charitable contribution program).

¶ 9 "Ballots serve primarily to elect candidates, not as forums for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) (citing *Burdick v. Takushi*, 504 U.S. 428, 438 (1992)). Here, ballots in the state of Illinois are not traditional public forums. An election ballot is issued by the government for the primary function of electing candidates. It is not a means through which a citizen traditionally expresses their political opinions. Instead, it is government regulated property that serves a specific time-sensitive purpose. Therefore, we find that a government-issued ballot is not a public forum and is instead a nonpublic forum.

¶ 10 The next step in our analysis addresses the content-based nature of the statute. A restriction on speech is considered content based if, in order to determine whether the speech is subject to a government restriction, one must look to "the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015). Here, because one must look to whether the ballot is completed to determine whether the statute has been violated, the statute is a content-based restriction.

¶ 11 Having found that section 29-9 of the Election Code is a content-based restriction of a nonpublic forum, we must determine whether it is reasonable and viewpoint neutral. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

5

¶ 12    First, we find that section 29-9 of the Election Code is viewpoint-neutral, as it restricts equally the photographing of any completed ballot, regardless of which candidates the voter selects.

¶ 13    Second, as to whether section 29-9 of the Election Code is reasonable, "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons*, 520 U.S. at 358 (citing *Burdick*, 504 U.S. at 433).

> "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.' " *Burdick*, 504 U.S. at 433 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

As the Appellate Court, First District, has previously noted, "Section 29-9 of the [Election] Code, the unlawful-observation-of-voting statute, safeguards voter privacy, protecting voters from potential coercion, intimidation and other influences and thereby preserves the integrity of the ballot." *People v. Deganutti*, 348 Ill. App. 3d 512, 520 (2004).

¶ 14    In considering these cases, we find the statute to be a reasonable restriction, as it neither limits a voter's access to a ballot, nor limits a voter's choice in voting. Instead, it effectually limits an outsider's access to viewing a voter's completed ballot. In making this determination, we note that a ballot selfie is a simple means by which a person could verify the vote of another. Absent the statute, a ballot selfie could be used to verify that a person has voted a certain way in an attempt to coerce or purchase votes. For example, an employer could use an employee's ballot selfie to verify that an employee has voted the way preferred by the employer under the threat of termination. Additionally, the existence or practice of the ballot selfie could influence voters to

6

cast ballots for candidates they believe are more publicly popular, rather than their personal preferred choice. There are, in fact, countless scenarios and hypothetical situations in which a ballot selfie could be used to coerce voters. Though the plaintiff is correct that other statutes exist criminalizing the purchasing of votes and voter intimidation, those statutes do not address the potential societal influences perpetuated through exposure to public opinion. Ballot secrecy is one of the most important protections for a voter because it ensures that a voter may vote his or her conscience, regardless of the person's public persona. For example, a person standing on a public street, wearing a shirt supporting "party A's" candidate and vocally encouraging others to vote for party A's candidate, is still protected from any potential consequences should he or she in fact choose to vote for party B's candidate. T-shirts and public proclamations do not have the effect of casting a vote for a candidate, only the ballot has that power. Therefore, ballot secrecy is of the utmost importance in protecting our system of democracy. Section 29-9 of the Election Code protects a voter's right to truly vote his or her conscience, free from coercion, influence, or bribery.

¶ 15    In addition to the protection of ballot secrecy, the statute protects against inefficient use of time at the polls. Allowing each voter to pose with and photograph a completed ballot would inevitably lead to delays and disorganization. Accordingly, we find it to be a reasonable restriction on the use of completed ballots.

¶ 16                                III. CONCLUSION

¶ 17    Therefore, we affirm the circuit court of Clinton County's dismissal of the plaintiff's complaint as section 29-9 of the Election Code (10 ILCS 5/29-9 (West 2018)) is constitutional as it does not violate the plaintiff's protections under the first amendment of the United States Constitution.

7

¶ 18    Affirmed.

¶ 19    JUSTICE CATES, specially concurring:

¶ 20    I concur with the majority's decision to affirm the circuit court's dismissal of the plaintiff's complaint, but for different reasons. I write separately because I am concerned, particularly, for the newly-registered and youngest Illinois voters, whose sole purpose in taking a "ballot selfie" is to display their enthusiasm, civic pride, and patriotism. The basis for my special concurrence in the majority's decision, however, derives from my belief that this matter was not ripe for judicial review, as the plaintiff did not take the "selfie" and suffered no harm.

¶ 21    Section 29-9 of the Election Code provides as follows:

>   "§ 29-9. Unlawful observation of voting. Except as permitted by this Code, any person who knowingly marks his ballot or casts his vote on a voting machine or voting device so that it can be observed by another person, and any person who knowingly observes another person lawfully marking a ballot or lawfully casting his vote on a voting machine or voting device, shall be guilty of a Class 4 felony." 10 ILCS 5/29-9 (West 2018).

¶ 22    Section 29-9 of the Election Code protects a voter's right to vote his or her conscience, free from coercion, influence, or bribery. The current version of this section was enacted in 1973 (Ill. Rev. Stat. 1973, ch. 46, § 29-9), decades before the advent of the "selfie." Nevertheless, under section 29-9 of the Election Code, as currently interpreted by some, the mere taking of a "ballot selfie" may result in a serious felony charge against an unwitting voter. Such a penalty would, in my view, seem to be an unreasonable restriction upon an individual's first amendment rights, when weighed against the governmental interests sought to be protected.

¶ 23    In recent years, the Illinois General Assembly has considered amendments to section 29-9 of the Election Code to provide that a person is not prohibited from photographing his or her own ballot during the voting process. See, *e.g.*, 101st Ill. Gen. Assem., House Bill 4104, 2020 Sess. However, until an amendment is enacted, those who wish to take a selfie as a display of civic pride might consider taking the photograph of himself or herself, with an "I voted" sticker, outside the area where ballots are cast.

**No. 5-19-0306**

| | |
|---|---|
| **Cite as:** | *Oettle v. Guthrie*, 2020 IL App (5th) 190306 |
| **Decision Under Review:** | Appeal from the Circuit Court of Clinton County, No. 19-L-3; the Hon. Stanley M. Brandmeyer, Judge, presiding. |
| **Attorneys for Appellant:** | Peter J. Maag, of Maag Law Firm, LLC, of Wood River, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Frank H. Bieszczat, Assistant Attorney General, of counsel), for appellees. |